UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| **DINESH YADAV,** | Case No. 8:24-cv-01898 |
| **Plaintiff,** | |
| vs. | |
| **RESIDENT VERIFY, LLC,** | |
| **Defendant.** | |

## AMENDED COMPLAINT
## PRELIMINARY STATEMENT

1. This is an action for damages brought by an individual consumer against the Defendant for violations of the Fair Credit Reporting Act (hereafter the "FCRA") 15 U.S.C §§ 1681 *et seq as amended*.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

3. Venue lies properly in this district pursuant to 28 U.S.C § 1391(b).

## PARTIES

4. Plaintiff Dinesh Yadav is an adult individual who resides in the State of Florida.

5. Defendant Resident Verify, LLC regularly conducts business in this District and has a principal place of business at 4205 Chapel Ridge Road, Lehi, UT 84043.

## FACTUAL ALLEGATIONS

6. In or around August 2022, Plaintiff was attempting to secure housing at an apartment complex named River View Apartments ("River View") in Tampa, Florida.

7. As part of the application to lease the apartment, River View obtained a consumer report from Defendant, which was ordered August 11, 2022.

8. Defendant's reports contained derogatory and inaccurate information about Plaintiff.

9. The inaccurate information includes but is not limited to, inaccuracies regarding Plaintiff's income (hereafter "inaccurate information").

10. Defendant retrieves income and employment information through a third-party vendor.

11. Upon information and belief, that third-party vendor is a subsidiary of Experian Information Solutions, Inc. that provides Defendant access to a data base of income and employment information.[1]

---

[1] Conspicuously absent from Defendant's Motion to Dismiss (ECF No. 10), and absent from its submissions to the Florida Commission on Human Relations, is any mention that the source of

12. Upon information and belief, the agreement that Defendant has with the third-party vendor disclaims the accuracy of the information in the database.

13. The income and employment information Defendant obtains from that third-party is then incorporated into a report prepared by Defendant and provided to Defendant's customers as a single consumer report.

14. The inaccurate employment and income information that Defendant included in the report it prepared on Plaintiff grossly disparages Plaintiff and misrepresents his income, impacting his eligibility for housing.

15. The income included in the report Defendant prepared on Plaintiff substantially undercounts Plaintiff's income.

16. Plaintiff disputed the inaccurate income that Defendant included on its consumer report by informing Defendant that his monthly gross income was well in excess to the amount being reported by Defendant on the report it prepared on Plaintiff.

17. With his dispute, Plaintiff provided sufficient documentation to Defendant to prove that the income it was reporting was inaccurate, including bank records and records from his employer.

---

the inaccurate information was a third-party vendor, and that it subsequently failed to even contact that source regarding the inaccurate information.

18. Despite Plaintiff supporting his monthly income estimate with multiple forms of verification, Defendant outright refused to even process a reinvestigation of the inaccurate information in the report Defendant prepared, and instead, Defendant directed Plaintiff to take the issue up with the property manager.

19. Despite Plaintiff's dispute to Defendant, Defendant refused to correct its report, and continued to inaccurately report Plaintiff's income to the apartment complex as a monthly income of $133.00.

20. Had Defendant accurately stated Plaintiff's income, Plaintiff's "Rent to Income" ratio would have been reported as 7.38. Instead, Defendant was reporting Plaintiff's "Rent to Income" ratio as 0.08.

21. As a direct result of the inaccurate income listed in the report prepared by Defendant, Plaintiff was denied housing.

22. In creating and furnishing the Plaintiff's consumer report, Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it reported about Plaintiff. Due to Defendant's faulty procedures, it misrepresented Plaintiff's annual income with no basis in fact.

23. Defendant has sold reports containing the inaccurate information to third parties since at least August 2022.

24. Defendant has been reporting the inaccurate information through the issuance of false and inaccurate consumer reports that they have disseminated and resold to various persons, both known and unknown.

25. As a result of the inaccurate report Defendant sold to River View in August 2022, Plaintiff was denied housing.

26. The sole basis, or substantial factor, for that denial was the inaccurate information that appears on Plaintiff's consumer report prepared by the Defendant.

27. In an attempt to regain eligibility for housing through River View, Plaintiff disputed the inaccurate information with Defendant by following Defendant's established procedures for disputing consumer reports in or around August 2022.

28. Shortly after Plaintiff received his inaccurate report from Defendant, he sent emails to River View on August 17 and August 19 wherein he once again attached proof of his real monthly income.

29. The River View responded by informing Plaintiff that the River View had to rely on the results of the "third-party screening" performed by Defendant, and that he should take up the issue with Defendant.

30. Plaintiff sent an additional dispute directly to Defendant on August 24 with the same information, to which Defendant explained that Plaintiff needed to send his disputes to River View, as Plaintiff had done the week prior.

31. Notwithstanding Plaintiff's efforts, Defendant has continued publishing and disseminating the inaccurate information to third parties, persons and entities.

32. Despite Plaintiff's efforts, Defendant has never (1) contacted its third-party vendor that provided the inaccurate income and employment information (2) contacted Plaintiff's employer or bank to verify the accuracy of the information it its reports; (3) contacted Plaintiff to follow up on, verify and/or elicit more specific information about Plaintiff's dispute; (4) contacted all third parties that would have relevant information concerning Plaintiff's dispute; (5) forwarded any relevant information concerning Plaintiff's dispute to the entities originally furnishing the inaccurate information; and (5) requested or obtained the actual verified income records relating to Plaintiff's income history.

33. In response to a dispute by a consumer, Defendant is obligated to perform a "reinvestigation" of the disputed information, and cannot shift the burden of performing that investigation onto the consumer or any other third-party.

34. After receiving the dispute from Plaintiff, Defendant simply never conducted any "reinvestigation" at all as that term is defined by 15 U.S.C. § 1681i(a)(1).

35. In response to Plaintiff's dispute, Defendant never determined that the information in its report regarding Plaintiff's income and employment was accurate and could remain it Plaintiff's report in accordance with 15 U.S.C. § 1681i(a)(5).

36. Defendant never forwarded Plaintiff's dispute to its third-party vendor that provided the inaccurate income and employment information.

37. Pursuant to 15 U.S.C. § 1681i(a)(5), if Defendant was unable to verify that Plaintiff's income was only $133 per month, and unable to verify that Plaintiff "Failed" the rent to income ratio analysis, Defendant was statutorily obligated to delete the income information and delete its "Failed" conclusion.

38. Upon information and belief, Defendant has no procedures in place to audit or assure the accuracy of the information provided to it by that third-party vendor.

39. Despite Plaintiff's exhaustive efforts to date, Defendant has nonetheless, deliberately willfully, intentionally, recklessly and negligently repeatedly failed to perform reasonable reinvestigation of the above dispute as required by FCRA, failed to remove the inaccurate information and continued to report the derogatory information about Plaintiff.

40. In an effort to avoid liability, once Plaintiff was denied housing, the River View blamed Defendant, and Defendant blamed River View.

41. Subsequently, Plaintiff filed a Petition for Relief to the Florida Commission On Human Relations ("FCHR").

42. At the time of Plaintiff's petition, Plaintiff believed that he was denied housing by River View due to his race and ethnicity, and Plaintiff made this allegation in his petition to the FCHR.

43. River View responded to the FCHR complaint by arguing that its decision to deny Plaintiff housing was the result of the information included in the report prepared by Defendant, and the screening results with respect to Plaintiff's income prepared by Defendant that listed Plaintiff as "Failed."

44. In the FCHR's Determination letter dated December 1, 2023, the FCHR determined that Plaintiff was not denied housing due to discrimination, but rather due to "his reported income not matching the income as entered on his application."

45. In other words, in explicitly making the finding above, and in finding that no discrimination took place, the FCHR found that the substantial cause of the housing denial at issue here was the inaccurate income listed in the report prepared by Defendant.

46. Further corroborating Plaintiff's allegation that Defendant outright refused to process his dispute is the FCHR finding that Plaintiff's communications requesting help updating his income information were not met with any assistance.

47. As a result of Defendant's conduct, Plaintiff has suffered actual damages in the form of lost housing opportunities, denial of housing, harm to reputation, and emotional distress including humiliation and embarrassment.

48. At all times hereto, Defendant was acting by and though its agents and servants and/or employees who were acting within the course and scope of their agency or employment, and under direct supervision and control of the Defendant herein.

## COUNT I – RESIDENT VERIFY
## VIOLATIONS OF THE FCRA

49. Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

50. At all times pertinent hereto, Defendant was a "person" and a "consumer reporting agency" as those terms are defined by 15 U.S.C. §§ 1681a(b) and (f).

51. At all times pertinent hereto, the Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

52. At all times pertinent hereto, the above-mentioned consumer reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

53. Pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o, Defendant is liable to the Plaintiff for willfully and negligently failing to comply with the

requirements imposed on a consumer reporting agency of information pursuant to 15 U.S.C. §§ 1681e(b) and 1681i.

54. The conduct of Defendant was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages and harm to the Plaintiff outlined more fully above and, as a result, Defendant is liable to the Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorney's fees and the cost of litigation, as well as such further relief, as may be permitted by law.

## **JURY TRIAL DEMAND**

55. Plaintiff demands trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgement in Plaintiff's favor and damages against Defendant, for the following requested relief:

A. Actual damages;

B. Statutory damages;

C. Punitive damages;

D. Cost and reasonable attorney's fees; and

E. Such other and further relief as may be necessary, just and proper.

        Respectfully Submitted,

        **FRANCIS MAILMAN SOUMILAS, P.C.**

    BY: */s/ Joseph L. Gentilcore*
        JOSEPH L. GENTILCORE, ESQUIRE
        1600 Market Street, 25th Floor
        Philadelphia, PA 19103
        (215) 735-8600
        jgentilcore@consumerlawfirm.com

Dated: December 16, 2024    *Attorneys for Plaintiff*